**UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE**

Donna L. Fields

    v.                                             Civil No. 18-cv-944-JL
                                                Opinion No. 2019 DNH 169
Andrew Saul,[1] Commissioner,
Social Security Administration


**O R D E R**

Donna Fields moves to reverse the decision of the Social Security Administration ("SSA") to deny her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423. The Commissioner moves for an order affirming the decision. For the reasons that follow, the decision of the SSA, as announced by the Administrative Law Judge ("ALJ"), is affirmed.

**I.  Scope of Review**

The scope of judicial review of the SSA's decision is as follows:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security. He replaced the nominal defendant, Nancy A. Berryhill, who had been Acting Commissioner of Social Security.

1

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the standard of review that applies when an applicant claims that an SSA adjudicator made a factual error,

> [s]ubstantial-evidence review is more deferential than it might sound to the lay ear: though certainly "more than a scintilla" of evidence is required to meet the benchmark, a preponderance of evidence is not. Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003) (internal quotation marks omitted). Rather, "[a court] must uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [his] conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (per curiam).

Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In addition, "'the drawing of permissible inference from evidentiary facts [is] the prime responsibility of the [Commissioner],' and 'the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts.'" Id. (quoting Rodriguez, 647 F.2d at 222). Thus, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as

2

it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).

**II. Background**

Fields was born in 1960. The date on which she was last insured for DIB, i.e., her DLI, is September 30, 2010.

In November of 2006, Fields had an x-ray of her cervical spine. In his report on the results, Dr. Robert Stevens wrote:

> Mild degenerative change is present at the C5-6 level with mild osteophytic spurring at C5-6 and C6-7. There is, however, no abnormal subluxation or erosion.

Administrative Transcript (hereinafter "Tr.") 563.[2] Dr. Stevens made no diagnosis, and Fields identifies no medical record that reports a diagnosis based upon Dr. Stevens' 2006 x-ray report.[3]

In October of 2014, Fields applied for DIB. She claimed that she had been disabled since September 30, 2005, as a result

---

[2] Subluxation is "[a]n incomplete luxation or dislocation." Stedman's Medical Dictionary 1856 (28th ed. 2006). Luxation is a synonym for dislocation. See id. at 1125.

[3] In October of 2007, Fields had another x-ray of her cervical spine. In his report on the results of that x-ray, Dr. Stevens wrote:

> Mild degenerative disc space narrowing is present at the C5-6 and C6-7 levels with no fracture or abnormal subluxation seen. Deformity of the spinous process of C6 is consistent with old trauma.

Tr. 564. Like the 2006 x-ray report, the 2007 x-ray report includes no diagnosis, and Fields identifies no diagnosis resulting from the 2007 x-ray report.

3

of anxiety, inability to focus, vision issues, feeling lost and hopeless, depression, four herniated discs, chronic obstructive pulmonary disease, osteoporosis, osteopenia,[4] ulcers, asthma, and alcoholism in remission.

On initial review, a state-agency consulting physician, Dr. Archibald Green, found that for the physical impairments that Fields claimed, there was insufficient medical evidence from the period prior to her DLI to evaluate her claim. Based in part on Dr. Green's finding, the SSA denied Fields' claim.

On reconsideration, another state-agency consulting physician, Dr. John MacEachran, had this to say:

> Dr. Green assessed no MDI [medically determinable impairment] however, I do find that there is support for MDI by imaging (Dr R Stevens) to support mild lumbar and cervical [degenerative disc disease]. There are cursory exams by NAMS TS M Kingston ARNP from 6/05 to 3/10 that were essentially normal but overall there is insufficient evidence to understand the claimant's symptoms and functional loss <u>if any</u> by DLI.

Tr. 159 (emphasis added). Based in part on Dr. MacEachran's finding, the SSA affirmed its initial decision to deny Fields' claim.

Thereafter, Fields received a hearing before an ALJ. After that hearing, the ALJ "determined that . . . testimony from a

---

[4] Osteopenia is defined as "[d]ecreased calcification or density of bone" or "[r]educed bone mass due to inadequate osteoid synthesis." Stedman's, supra note 2, at 1391.

4

medical expert was necessary," Tr. 10, and she conducted a supplemental hearing. At the supplemental hearing, the ALJ heard testimony from Fields and from a medical expert, Dr. Kathryn Rohr, who is a board-certified orthopedic surgeon. Based upon her review of Fields' medical records, Dr. Rohr gave the following relevant testimony:

> Q . . . . Could you please tell us what medically determinable impairments are supported by the record?
>
> A Yes, Your Honor. This claimant has adequate information in her medical record to confirm the diagnosis of a herniated nucleus pulposus at L2/3, which involves the L2 nerve root; osteoarthritis of the cervical and lumbar spines; and carpal tunnel syndrome that is mild, left going to the right; and briefly mentioned and unlooked up problem with the left shoulder, previously called an impingement syndrome by the one physician.
>
> Q In your opinion, are the impairments you noted documented . . . on or before September 30th of 2010?
>
> A No, Your Honor.
>
> Q In your opinion, were there any medically determinable impairments documented in the record prior to September 30th, 2010?
>
> A No, Your Honor.
>
> Q . . . . In your opinion, can you reasonably infer any of the impairments back to September of 2010 or before then?
>
> A No, Your Honor.

Tr. 114-15.

5

After the hearing, the ALJ issued a decision in which she determined that "[t]hrough the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." Tr. 12.[5] Consequently, she ruled that Fields "was not under a disability as defined in the Social Security Act at any time from September 30, 2005, the alleged onset date, through September 30, 2010, the date last insured." Tr. 14.

**III. Discussion**

   A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for DIB; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. § 423(a)(1)(A)-(D). The only question in this case is whether the ALJ correctly determined that Fields was not under a disability from September 30, 2005, through September 30, 2010.

To decide whether a claimant is disabled for the purpose of determining eligibility for DIB, an ALJ is required to employ a

---

[5] The SSA regulations define "signs" as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." 20 C.F.R. § 404.1502(g).

6

five-step sequential evaluation process. See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Purdy, 887 F.3d at 10 (quoting Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520.

With respect to the Step 2 severity requirement, the SSA regulations provide that

> [i]f [a claimant does] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, [the SSA] will find that [the claimant is] not disabled.

20 C.F.R. § 404.1520(a)(4)(ii). The regulations also explain that for an impairment to be "medically determinable," it "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical

7

and laboratory diagnostic techniques." 20 C.F.R. § 404.1521 (emphasis added).

At the first four steps in the sequential evaluation process, the claimant bears both the burden of production and the burden of proof. See Purdy, 887 F.3d at 9 (citing Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must prove she is disabled by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).[6]

B. Fields' Claim

Fields claims that the ALJ's decision must be reversed because her finding that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment [through the date last insured]," Tr. 12, is not supported by substantial evidence. The court does not agree.

Substantial evidence is evidence that "a reasonable mind . . . could accept . . . as adequate to support [a] conclusion." Purdy, 887 F.3d at 13 (citation omitted). Here, to support the

---

[6] At step 5, the burden of proof shifts to the Commissioner, see Seavey, 276 F.3d at 5 (citing Arocho v. Sec'y of HHS, 670 F.2d 374, 375 (1st Cir. 1982)), but the ALJ did not reach step 5, so there is no need to describe the mechanics of that part of the analysis.

8

conclusion that Fields challenges, the ALJ relied upon the testimony of Dr. Rohr, who stated that she found no support in Fields' medical records for the existence of any medically determinable impairment prior to Fields' DLI. Fields claims that Dr. Rohr's testimony is not substantial evidence because

> [i]n her testimony Dr. Rohr identified osteoarthritis of the cervical spine as a medically determinable impairment but said there was no information to establish its presence before the date last insured, despite an x-ray of the Claimant's cervical spine from 2006 that showed evidence of degenerative and osteophytic changes.

Cl.'s Mem. of Law (doc. no. 7-1). That argument is not persuasive.

Before she gave the testimony that Fields challenges, Dr. Rohr examined Fields' medical records, including the 2006 x-ray report. See Tr. 113, 115, 563. Yet, while identifying a post-DLI diagnosis of osteoarthritis, Dr. Rohr testified that she did not "have any evidence with good establishment of that diagnosis before 2010." Tr. 116. For her part, despite having the "burden of showing [a] medically determinable . . . impairment," Doucet v. Astrue, No. 12-2123, 2013 WL 12126354, at *1 (1st Cir. May 24, 2013) (citing, inter alia, Bowen, 482 U.S. 137; Freeman, 274 F.3d 606), Fields points to no pre-2010 diagnosis of osteoarthritis (or any other condition). That is a problem. See, e.g., Wallaga v. Berryhill, No. 18-cv-687-JL, 2019 WL 2004318, at *5 (D.N.H. May 6, 2019) (affirming ALJ's finding

9

that claimant did not have medically determinable mental impairment prior to DLI because "the record fail[ed] to contain any valid diagnosis by an acceptable medical source supporting a mental impairment prior to [the claimant's DLI]"); see also Buchanan v. Comm'r of Soc. Sec., No. 1:18-cv-466, 2019 WL 2710118, at *6-7 (S.D. Ohio June 28, 2019) (affirming ALJ's finding that Lupus, Addison's disease/adrenal insufficiency, and postural orthostatic tachycardia syndrome were not medically determinable impairments when claimant failed to demonstrate pre-DLI diagnoses).

Rather than identifying and relying on a pre-DLI diagnosis of osteoarthritis, Fields' argument is based upon an assumption that the degenerative and osteophytic changes revealed by the 2006 x-ray are medical signs of osteoarthritis. But Fields has produced no evidence on this point, and in his assessment, Dr. MacEachran identified the 2006 x-ray results as evidence supporting a diagnosis of mild degenerative disc disease, not a diagnosis of osteoarthritis. And while Dr. Rohr testified that Fields had been diagnosed with osteoarthritis and a herniated disc at L2/3 after her DLI, Dr. Rohr did not mention any post-DLI diagnosis of an impairment involving Fields' cervical spine, which was the target of the 2006 x-ray. In short, given the fundamental disconnection between the medical signs on which Fields bases her claim and any diagnosed physical impairment,

Fields' attempt to discredit Dr. Rohr's testimony fails. Thus, that testimony is substantial evidence that supports the ALJ's finding that the record includes no objective medical evidence of an MDI prior to Fields' DLI.

That said, the court recognizes that the 2006 x-ray report does document several anatomical or physiological abnormalities. But just as the fact that all dogs are mammals does not mean that all mammals are dogs, the requirement that a medically determinable impairment must result from an anatomical or physiological abnormality does not mean that every anatomical or physiological abnormality results in an MDI. Here, Fields has proven the existence of several pre-DLI medical signs, but without evidence of any diagnosis linked to any of those signs, she has not carried her burden of showing a pre-DLI medically determinable physical impairment. In sum, Step 2 requires proof of a medically determinable impairment, not just proof of an anatomical or physiological abnormality, and that is all that Fields has produced.

Furthermore, even if the ALJ had erred by ruling that Fields did not demonstrate the existence of an MDI before her DLI, any such error would appear to have been harmless. Presuming, most favorably to Fields, that the ALJ should have found that she had an MDI of either osteoarthritis or degenerative disc disease before her DLI, Dr. MacEachran stated

11

that "there [was] insufficient evidence [in the record] to understand [Fields'] symptoms and functional loss if any by DLI." Tr. 159 (emphasis added). Dr. MacEachran's statement is substantial evidence that if Fields had an MDI of osteoarthritis or degenerative disc disease before her DLI, she has not carried her burden of demonstrating that either impairment satisfied the Step 2 severity standard, under which an impairment must "significantly limit [a claimant's] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c). Thus, while the court agrees with the ALJ that Fields has failed to carry her burden of showing a medically determinable impairment that existed before her DLI, it would probably also find that she has failed to carry her burden of showing a severe impairment that existed prior to her DLI. That would provide an alternative basis for affirming the ALJ's decision.

**IV. Conclusion**

Because the ALJ committed neither a legal nor a factual error in evaluating Fields' claim, see Manso-Pizarro, 76 F.3d at 16, her motion for an order reversing the Commissioner's decision [7] is denied, and the Commissioner's motion for an order

---

[7] Document no. 7

affirming his decision[8] is granted.  The clerk of the court shall

enter judgment in favor of the Commissioner and close the case.

    **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 27, 2019

cc:  Christopher G. Roundy, Esq.
     Sarah E. Choi, Esq.

---

[8] Document no. 9